Take your case. Case 11-4408, Lewis-Kilburg v. Mohiuddin Will the attorneys that are going to present oral arguments please step up and identify yourselves for the record. Good morning, Your Honors. William Gibbs on behalf of the College of Lewis-Kilburg. Good morning. Good morning. Gail Weaver on behalf of Minowar Mohiuddin and Dante Cab Company. I'm going to be arguing on their behalf. I hope to take maybe five minutes, and my brilliant and lovely daughter is going to take the rest of the time on behalf of her defendant. Good morning, Your Honors. I'm Kim Jansen. I am here on behalf of the Department of Tax and Rebellion Management, Tax Negotiation Services, and Wally Cab Associations. I'm also here to speak on a pre-hearing basis. All right. Who's going to present? Well, first of all, Mr. Gibbs will be presenting first. But of you two... I will leave off with the first five minutes and then... All right. All right. If that's acceptable. Yes. About 15 minutes for each side. Mr. Gibbs, from there, you can save out some time for rebuttal. That's great. I can save about five minutes or so. All right. Your Honors, may it please the Court, myself and Daniel Koten represent Joyce Kilberg on this important matter that stands before you. Joyce Kilberg, as you may recall from the review of the briefs and the record, was a passenger in a taxi cab, October 6, 2009. At that time, the taxi cab suddenly left the roadway and Joyce Kilberg sustained serious and significant injuries. That part of the case, I guess, is not all that ununique and not all that different from what unfortunately happens to people in automobiles throughout the state. However, what followed is very unique. And I say that because that night there was an indication from the driver of the taxi cab, Mr. Mahutin, that the reason that this taxi cab left the roadway and Joyce was injured was because of sudden acceleration, a phenomenon seen sometimes in product liability cases in which the taxi cab literally runs away from the driver. That night, the owner of the taxi cab, Zante Cab Company, was aware that Mr. Mahutin believed that that sudden acceleration caused this incident. And the Taxi Cab Association, which is Wally Cab, yellow spelled backwards, that has the checker cab insignias on the side of the taxi cabs, was also made aware of that claim. Even more unique than that is that within two days of the incident, the taxi cab was moved by those defendants to a lot at 949 North Elston, which is across the street from the yellow cab car wash. And the entities that were controlling that lot were the Taxi Medallion Management Entity and the Taxi Affiliation Services Entity, which are related corporations to yellow Wally checker. And is it enough to say that since they're related, they were aware of the letter that's not attached, the order that was directed at Zante and the driver? So as to the parking lot defendants? Yes, the two parking lot defendants. Right. We have alleged, and we're only at the 615 stage. Yes, we're aware of that. We have alleged that... Because of their affiliation. Number one, because of their affiliation with the companies. And number two, because of actual knowledge. What is that actual knowledge? Well, that's going to be discussed. What is pled? Well, no. What is pled? What is pled is that they knew. Yes. How is it pled that they knew? Knowledge or something more? Well, it is alleged that those entities knew of three things, really. Number one, the letter that was sent asking that the taxi cab be preserved and protected on the night. Number two, the fact that there was, in fact, a complaint of law filed in the circuit court. Yes. And number three, that there was actually a court order entered. Yes, but the order was entered regarding Zante and the driver, correct? Correct. The letter, we don't have that, so I don't know who that was addressed to. The complaint says that that letter was addressed to Zante, Mahiuddin, and... Wally. It was actually addressed to Checker Cab. Which is the non-entity. Okay, so... The allegation is that the entities that control that lot knew of that court order, knew of the fact that a complaint was at issue, and knew of our request to preserve and protect. Yes, and my question again is, how did they know? By way of Zante. By way of Zante? By way of their affiliation? Is that what the complaint says? Yes, and, or, they fail to have in place some kind of system when they take possession of taxi cabs, that they would determine whether or not this is evidence. Well, their failure, are you saying their failure is their knowledge? I'm still asking you, how are you pleading that they knew of the letter, the order, and, what was the third thing? The complaint at law. Yes, the complaint, I thought of it. Is there something more than their affiliation with the garage people, for lack of a better term? Well, the car doesn't just get there. No, the car is there. Zante arranges. Is there more in your complaint other than their affiliation? Simply the fact that Zante arranges for that taxi cab to go to that lot. Yes. And that we allege, at this stage, that Zante tells the people that are controlling the lot of the letter, of the complaint, and of the court order. That may be disproven. Well, where is that in the, could you reference the complaint to me? Where is that? So, we're in our sixth amended complaint, as you know. Yes, it's in the brief. But, yes, at count four begins our allegation against taxi medallion management. All right, A-9. And at paragraph... You say in paragraph nine that they knew or should have known that the driver suggested that it caused the crash with sudden acceleration. Correct. What do you say in 26? Due to a corporate relationship and its agreement to store the taxi cab, the medallion management knew of the October 9th correspondence, the filing of the complaint, and the filing of the court order. That's exactly right. And so, it's twofold. Number one, due to its corporate relationships, the interrelatedness of Zante, Woolley, taxi medallion management, taxi affiliation services, they knew of it. Number two, its agreement to store the taxi cab with Zante. In other words, there's a reason that this taxi cab ends up at this lot. Yes, to store it. And the reason is Zante asked that it be stored there. Yes, but there's no allegations in here about it. In that transaction that Zante tells those entities of the letter... But you don't have that in this complaint. Well, due to its agreement to store the taxi cab... It's really not in there, as far as I recall. They knew. Yes. Whether that is disproven, I guess... But, Mr. Gibbs, there's no allegation that anybody from Medallion and the other management company, whatever they're called, were told any of these things. It's not pled in this complaint. Now, it is pled that due to their corporate relationship and their agreement to store the cab, that they knew. That's what it says. And I guess who's told us? You're saying it's a real inference. And who told what, when, and why, and all that kind of stuff is what we will discover once we're allowed to proceed with the case. This was your sixth amended complaint, though. Absolutely, because, as you might recall, there was all sorts of questions about who actually was controlling this. You do have certain allegations, clearly, against the cab driver, Zante, and, I don't know, Checker? Woolley. Or Woolley. Well, they say you don't have anything against Woolley. That they weren't notified of the letter. They certainly weren't notified of the... I'm talking about the Medallion people now and the garage people. They weren't notified specifically of the letter, the complaint, or the order. But as far as Zante and the driver, that is what? Well, yeah, and as far as the parking lot defendants, whether they have that defense, and whether that defense will prevail, that they didn't know of the existence of these things, should they have known? All those kinds of questions are absolutely right for them to argue. You still have to plead, though, how they knew or how they should have known. Now, your allegation to me, as far as the garage defendants, is that they knew or should have known because they had an affiliation and because they took the car in. Now, let's talk about the Martin case that you recently asked to cite, and the order was entered. In that case, which is not a pleading case, it's a summary judgment case. Correct. In that case... I was just going to say that was not my request, but I'm happy to talk about it. Oh, all right. Well, anyway, sorry. I knew someone asked for it. All right. In that case, though, it sort of states that just taking possession, and maybe that's why they cite it, taking possession of the property doesn't necessarily suggest a voluntary undertaking or even a special circumstance. Yeah, so I guess to address Martin, I'm just going to go back in time a little bit. Boyd comes out in 1995 and says that where the insurance company took the propane heater and lost it, that is a claim for spoliation. And through the years, there have been a number of spoliation cases that this court has heard and that the Supreme Court has heard. And there's one case called Broby, B-R-O-B-B-E-Y versus Enterprise, that is actually a Fifth Division case from 2010. And in that case, there's an individual that rents a van from Enterprise Rent-A-Company. And as that individual is driving in the parking lot, he feels that the car is behaving erratically. He tells someone from Enterprise. Enterprise says, No, it's okay. Don't worry about it. Within about three or four days of that incident, the van rolls over exiting a highway, and there's catastrophic injury. And in Broby, this court talked about a case called Miller versus Gupta. Miller versus Gupta is the case where the plaintiff's attorney sends the request exactly for the x-rays from the physician, and the doctor complies, obtains the x-rays, puts them on the floor next to his wastebasket, and the x-rays are gone. And there was further testimony about how they were destroyed. The clean lace, right? The clean lace, exactly. And this court and all courts have said, that case kind of gives us some hint of what a special relationship is. It's where there is a request to preserve evidence. It's where that request is somehow complied, and that evidence is put aside and preserved and segregated. It's where there's an undertaking by that whom is being requested to preserve and protect the evidence, and that they continue to attempt to preserve that evidence. And then the evidence goes missing. That's the special circumstance. And in the Grobe versus Enterprise case, Enterprise, this court said, Enterprise had a duty to exercise reasonable care to preserve the van. Number one, the plaintiff had complained that there was some problem with the car. Just like Kilberg, we know that there was a complaint of the problem. Enterprise undertook to preserve the van and conduct its own inspection. We know that here, Zante, Wooley, Taxi Modeling Management, Taxi Affiliation Services, takes the car, instead of totaling it and sending it out for sale, takes the car and puts it at this lot at North Elston. We know that they put it aside. We all went out there on November 9th to take a look at it. Who put it aside? All of them. Again, there is a reason why that taxi cab ends up in that lot. The reason is that Zante says to Wooley, Taxi Modeling Management, Taxi Affiliation Services, we need you to preserve and protect this. Okay, now we're going, where is that in the complaint? That is what is going to be discovered in this case. No, this isn't the time that you start discovering. The allegations are supposed to be there. Now, you have certainly some allegations against Zante and the driver, but when you start making these allegations about these conversations that supposedly took place between Wooley or Yellow and the medallion people, I mean, isn't that supposed to be in the complaint? How would we be able to, in good faith, I'm not the one that's going to tell you how you would be able to. The court dismissed the complaint against every defendant. Correct. Now, there could be reasons for the dismissal against certain defendants and not others, but here she dismissed all of them. She did. And this case, Martin, certainly suggests that a way to have a special circumstance could clearly involve a letter, a complaint, an order, and that order was directed specifically to at least two of the defendants that we know of. Correct. But in addition, you still have to make allegations, factual allegations, in the complaint to be able to snare in or bring in Taxi Medallion and the affiliation. And you can't say now that we're going to come up with these allegations later or say, you know, they knew, but you have to say how they knew. The factual underpinnings have to be in there. Now, if it's going to be a conclusion that it's based on a corporate relationship, let's talk about the agreement, the agreement to store. Does that say anything other than that they agree they will not violate the law or they will make sure they don't? The agreement that the landowner of 949 North Elston has with Taxi Medallion Management, the obligation of which is paid by Taxi Affiliation Services, says that they shall not do anything unlawful upon the premises. I guess, you know, exfoliation of evidence is unlawful. But to speak to, I guess, your question about each and every defendant. Yes. Mahi Uden knows that he has been involved in a significant injury case. He knows that the reason, perceived reason, is that the cab has run away from him. He knows that there is a request within three days of the incident to preserve the vehicle. He knows that a complaint has been filed against him within seven days of the incident. And he knows of a court order that says you must preserve and protect that evidence within nine days of the incident. There is a duty for Mr. Mahi Uden to preserve and protect that evidence under Illinois law. The same applies to Zante. Yes. Zante, as the owner, knows all that too. Wooley, as the Taxi Cab Association, and we've attached to our complaint the association agreement between Zante and Wooley. And that says that Zante and the cab driver must notify Wooley within one hour of the incident, of the fact that the crash has happened. Yes. And so Wooley knows of the incident. They know of Mahi Uden's reason for the incident. And we allege that they know of the letter, of the court order, and of the filing of the complaint of law. Because they are the taxi cab affiliation that this taxi cab is operating pursuant to. When the taxi cab then moves to 949 North Elston, the entities that voluntarily assume the duty to preserve and protect that evidence, by their agreement with Zante, they have voluntarily assumed the duty to protect that evidence, which we have made abundantly clear to Zante, we believe will be critical to an underlying cause of action. All right. So you're saying the agreement creates a voluntary assumption to preserve. Under void, it can fit into either of the two criteria. That's either a special circumstance, and or it's a voluntary undertaking by those entities. Those entities did not have to take this taxi cab. They did not have to. Then why is that? But they did. Why did they have to? Isn't this a storage area? This is a vacant lot. Yeah. Do they store cabs there? Is this strictly, is this not something they use on a regular basis, or is it just for cabs that have been enacted? I can tell you from being there myself, this isn't in the complaint, obviously, but there are a number of things. We have to stick to the complaint. Right. And what the complaint tells the court is that by two ways, number one, their relationship, the interrelated nature of these corporate entities with the other corporate entities, and number two, by their agreement to voluntarily take this taxi cab into their possession, a taxi cab that they do not own, they assume a duty to preserve and protect that critical evidence. And that is why we ask that this court reverse dismissal as to all five of those defendants, allow the case to proceed with some discovery on the who, what, when, where, and how of all the specifics that will be involved in these transactions. Before you, let's move on to the suggestion here that in the complaint, you have an alleged proximate cause. Sure. Our complaint alleges that as a result of the destruction of this critical evidence, and the event data recorder has two component parts, one of the component parts was removed. Again, you know, who removed it, when it was removed, why it was removed, all of those things will be discovered. But because of that, this claim of sudden acceleration cannot be proven. Well, aren't you alleging that it's a proximate cause of not being able to prove this? Correct, correct. And that, you believe, will suffice? Correct, because now Joyce Kilburg has been deprived of the opportunity to prevail on a product liability cause of action, which if that evidence had been preserved and protected as requested, she would have been able to prevail with them. Anything further you want to add at this point, or do you want to save your time for rebuttal? You know, I would. I just, I don't know if I really answered your question as to Martin. I started talking about the cases that preceded it, and Martin, in October of this year, obviously is a critically important case probably to your analysis. I believe that the Supreme Court in Martin began to take a look at the exfoliation of evidence cases and envisioned a world in which every single traffic crash that happens, all the vehicles will have to be preserved forever. Every time that an I-Beam falls into a river, that I-Beam will have to be preserved forever. Every time that someone trips and falls, like in Dardene, on pavers in front of someone's home, that hole will have to be preserved forever. And so our Supreme Court said, hang on a second here. As a just black line rule, potential litigants, the rule is there is no duty to preserve evidence. And as a black line rule, potential litigants cannot be required, just black line, to preserve evidence every single time there's an incident. There must be a special circumstance. There must be situations, like in Kilburn, where within three days of the incident, there's a request for that evidence to be preserved. But then there's a complainant law file, but then there's court orders, and it piles on and piles on so that this case, because of the unique nature as to the exfoliation claims, fits exactly in the Martin v. Keeley and Sons framework of what it does. And I think there's certainly an argument to be made that perhaps to some of these defendants, you know, that that may well be true. I'm not sure that the allegations about the possession of the cab at the garage have met that. Special circumstance is where you're saying met that? Well, it could be either a voluntary undertaking, a duty, or special circumstances. But, you know, is it enough to say someone knows something without saying how? Is it enough to say they have an association and therefore they have knowledge? I don't know. I believe there's reasonable inferences that the entity that takes possession of the... Because I think the cases pretty much say that simply because you have possession of something does not amount to a voluntary undertaking, does not amount to a special circumstance. The mere possession... Just like potential litigant, standing alone does not equate to duty. But when you add in the product liability implications at the scene, when you add in the request for preservation by letter within three days, when you add in the court order... Why isn't the letter attached? The letter requesting preservation of the vehicle? I don't have an answer for you on that. We certainly would ask if this court were inclined to rule that way. No, I just wanted to know. There is no... This is a 2-6-15 dismissal. That's right. Obviously without prejudice. And, you know, if we were to hold, based on the line of questioning here today, and I'm not saying that it is, but if we were to hold that special circumstances have been shown with regard to Muhyiddin and Zante and maybe even Woolley, but the allegation that the parking lot defendants knew of the letter and the complaint in the court order is a conclusory statement. It's not backed up by any facts, and that's not sufficient at this time. You can come back later, can't you? And as you're doing discovery with regard to the remaining defendants, if they're still in, you find out that you have evidence that the parking lot defendants knew about these things, you could just come back in and bring your six? Seven. Seven. I mentioned seven. If the court is so inclined to rule in that way, we would ask that we be granted leave to re-plead as to those defendants. But you have to ask the trial court that. It's a dismissal without prejudice, right? It's a 2-6-15 dismissal. It's a dismissal with prejudice. A 2-6-15 dismissal with prejudice? Yes, and so we'd be asked to be allowed to re-plead at a later date if and when those facts became apparent. Maybe you can refresh me on this. Did the trial court make a statement with regard to that? Why was it being dismissed with prejudice? Was it because it was the sixth complaint? I believe so. Was there something in there? There was no statement as to that fact, but that's what I believe to be true. Don't you usually need a statement by the trial court under 2-6-15 to make it with prejudice that the trial court is making a determination that it's found that it can't be pledged in any way? Exactly. I believe that's what the trial judge said. Oh, that's what the trial judge said. Okay. Yes. Thank you. As a practical matter, just so the courts are aware, Joyce Kilberg has been adjudicated a disabled person, so as to questions of statutes of limitations, those will hold during her disability. That may lead to the ability to re-plead, should that option be available to the plaintiffs by this court hearing. Thank you. And we'll allow you some time to rebuttal. Thank you. Good morning. Good morning. As you've demonstrated, you understand that their allegations is that there were special circumstances as to the two defendants that I represent, and these special circumstances were the letter that they wrote, the lawsuit that they filed, and the order that was entered. You represent the cab company? Oh, the cab. The Zante and the driver. The Zante and the driver company, and Mounawaramohi-Hewitt, yes. The deficiency with those circumstances as being a special circumstance is that there is no allegation that this, what they claim is a critical piece of evidence, this event data recorder, there is no allegation that that was within the possession or control of Mohudin or Zante at the time that those events occurred. Okay. When they wrote the letter, when they filed the lawsuit, and when the order was entered by Judge Hewitt. Their allegation is that this event data recorder was in the taxi cab through October the 8th. They don't write the letter until October the 9th. Don't they say through and thereafter? No. I mean, aren't you really splicing? They say sometime between. They say in their complaint. I'm sorry. Go ahead. Go ahead. They say sometime between. Excuse me. They say sometime between, with regard to your points, they say sometime between the day of the accident and November 9th it goes missing. Yes. And in paragraph 8 of Comp 2, they say at that time and place, and through October 8th, at that time and place of the date of the accident, October the 6th, and through October the 8th both component parts of the event data recorder were present. They don't say that they continue to be present. They say that my clients possessed and controlled the cab from October the 6th and thereafter. But they don't say that the event data recorder was within the cab. And that's fatal to their claim. It says right here, paragraph 19, at the time the subject taxi cab was moved to 949 North Elston Avenue, both component parts. Which account are you in? I'm reading page A11. That's not the account addressed to my clients. Comp 2 is addressed to my clients. Okay. So you're hinging everything on the, that this count, this fact that it's alleged doesn't apply to yours. Correct. It's not alleged in the count against my client. Okay. So which counts are you? You're 1? I'm counts 1 and 2. Count 2 is the spoliation. Yeah. Okay. So at the time that they did all of these things, and at that time, this letter, according to the Isn't that something that, first of all, doesn't the court order say that the cab is to be preserved in its current condition? So isn't that something that will be flushed out in terms of the pleadings? Whether that order suggests that the cab is to be preserved in its condition. And there's no allegation that it wasn't. Because there's no allegation as to when precisely this event data recorder went missing. Well, it says on October 6th it was equipped. Yes. It says on October 8th and thereafter. No. It says that it was there through October the 8th. It does not say thereafter. It says at the time of place and through October 8th, both component parts were present. Yes. Okay. It doesn't say that they were thereafter. Then it says on October 8th and thereafter. We possess the text, yes. Yes. And then it says. But if the event data recorder had gone missing before that time, we can't be charged with a duty to preserve something that may well not have been there. Well, I don't think you can escape the allegations that you can infer that the event data recorder was present in the cab when it went to the lot. And at some point, yes, it became missing. I mean, is your whole argument going to be that there's a factual dispute or there is no factual dispute? Or simply that there's nothing here to suggest that the event data recorder went missing at some point while it was in the possession of your clients? My argument is that the complaint has its draft. It does not state sufficient facts to create a duty. And you want to limit everything we do here based on the allegations in one of the counts? No. And I'm saying that the fact that they wrote a letter, it seems that some people are willing to accept that simply because a lawyer who has no relationship whatsoever with my clients writes a letter demanding that they keep this taxi cab until this lawyer decides that they can finally get rid of it. I'm saying that that's not sufficient to create a duty. But we don't have just a letter. We have allegations of a letter, a complaint, and an order specifically directed at your clients. The complaint that they filed, that they're claiming raised a special duty. If you'll look at the complaint, it's a run-of-the-mill automobile negligence complaint. It says nothing about an event data recorder. It says nothing about a potential product liability case. It says that my client, Mr. Moe Hewden, lost control of the cab, ran off the road, and ran into a tree. There's nothing in that complaint that would lead my clients to believe that there was going to be an issue about some event data recorder. But it was your client who raised the prospect of the fact that it was a runaway cab. So your client knows that it has to do with a defect in the automobile, and therefore would be reflected in the data. According to the complaint, my client raised the prospect that the cab had a sudden, unexpected acceleration. There's nothing in the complaint that indicates that my client had any knowledge that there was an event data recorder in this vehicle. I've been around the block a few times. Before this case, I didn't know that there were event data recorders in these vehicles. You didn't? I did not. There's a lot of cases that have been tried for the last several years where the parties are using event data recorders for multiple, multiple things in personal injury cases. And it's something new. I mean, I don't think it is. We've reviewed records where there's been extensive testimony from experts who have reviewed what, you know, are commonly referred to as the black boxes of automobiles. So, I mean, I don't think this is new. Well, this is my 40th year of doing this stuff, and before this case, I can tell you frankly that I never knew that. Unfortunately for all of us, in good and bad ways, but event data recorders are definitely out there. They have been for a while. They're being used. You can read multiple cases where event data recorders have been the subject of testimony and review. Your Honor, would you expect a cab driver or a medallion owner to be aware of that? This is something that he does for a living. He drives a car every day. You don't think he knows that that box is in there? No, I don't. Well, they alleged that he knew anyway. It's in the complaint. But let me ask you this. Before we get too far down the road on this special circumstance thing, I want to make sure I understand your point with regard to the dates, okay? I want to make sure, are you saying that there's some significance that the accident was on the 6th and the letter didn't go out until the 9th? Is that what you're saying? Yes, sir. Tell me what you think is the significance of that. And they allege that the box was in the cab at least until the... Through the 8th. Through the 8th, okay. So you're saying that between the 8th and the 9th it may have been stolen and therefore... I don't know. They allege that your client and Dante actually took the thing out. Don't they allege that? I don't think so. Is there some suggestion of that? If they do, there's absolutely no basis. I don't believe that they do. Between October 6th and November 9th, Mohit, Ian, and Dante removed or allowed the removal of the data report. Or allowed. Yeah. So that takes us from the day of the accident to the day that it's discovered that it's missing. Now, I want to make sure I understand this point. The day that it's discovered missing is in November. I know. That's what they say. They say between October 6th and November 9th. That's allegation 18. I want to make sure that I'm not misunderstanding. Are you saying that between the date of the crash and the date that the special circumstances arise is a determinative gap there? I'm saying that without an allegation that that device was still within the vehicle at the time that they proposed the letter, got the order, and filed the complaint, that if there's no allegation that it was in there, that can't be a special circumstance that would give a rise to a duty for them to preserve that evidence. And the evidence is not the case. In the order, they ask that the taxi can't be preserved. In its what? In its current condition. Now, is that going to be a question of fact later, what its current condition was? Or is the court allowed as a matter of law to dismiss this on the pleadings because conditions doesn't suggest anything? Is that what you're asking? As a matter of law, the court can say this can never state a claim for exfoliation. This was a judgment on the pleadings, not a summary judgment. It was at the pleading stage. Now, if there are three allegations regarding your clients, the letter, the complaint, and then an actual court order. I'm saying that even if you disregard my argument about the event data recorder not being in there when those things happened, there is no case which says that those things constitute a special circumstance. As a matter of fact, in Anderson v. Mack Truck, the court specifically stated that we declined to hold. Are you the one or the other defendant that asked to cite Martin? Both. All right. Now, in Martin, here's what they say. Unlike the plaintiff in Miller, plaintiff never contacted the defendant to ask it to preserve evidence. Plaintiff never requested evidence from State Farm. And he never requested that State Farm preserve the sidewalk or even the defendant's documents, even document its condition. That does not, that is not a holding. I understand, but don't they suggest in Martin that a special circumstance can be when you make a request? Yes. And here we have more than a request. We actually have a complaint directed specifically at your two clients, and we have an order telling those people to preserve the cab in its condition. Could this possibly be a special circumstance? What they say is that in their case, in that case, in Miller v. Gupta, that they hinted at what might be. They've never been confronted with a situation where a request was made. Okay. That's what we have right here today. We've got a request. And we have an order. The case that a request was an issue is Anderson v. Mack Truck. The problem with that is that Anderson is the second district case that was decided in 2003, and Miller, I'm sorry, and Martin was decided just recently, and the Supreme Court has told us now over and over and over again, going all the way back to Miller, were hinting to you that this is a special circumstance. They said it in Miller. They said it in Darden. And in Darden they say, here's what's different between Darden and Miller. There's the attorney request. And then they go to Martin, and at the end of Martin they flat out say, possession of the property and a request by the attorney may be a special circumstance. They've never been confronted with it. Well, now we're confronted with it, but my question is, how many times does the Supreme Court have to say it before somebody rules? And I'm telling you that you're saying that Anderson was a second district case decided in 2003. The rationale, Martin, was specifically adopted by the Supreme Court in Darden.  This is Justice Burke, and this is Justice Burke and Martin. It is clear from the context of the Darden decision that something more than possession and control are required, such as a request by the plaintiff to preserve the evidence and slash for the defendant's segregation of the evidence for the plaintiff's penalty. Which paragraph are you in, Judge? That's at the very end of the decision. They note the paragraph. Paragraph 45 in my print. I mean, it almost seems to me that the Martin case hurts you. I disagree. Because they're saying, again, they're saying the same thing they said in Miller, they're saying the same thing they said in Martin. I mean, in Darden, they're hinting and hinting. This is a special circumstance. But they're saying that it might be, but they've never been confronted with it. Okay, well, we're confronted with it. So here's the thing. I got the second district just saying, we're not willing to rule at this point that this is a special circumstance. And they say that in 2003. I'm sorry, you know, I misspoke. Darden was in 2004. So after Anderson, in Darden, they made a specific point of distinguishing the Darden case from the Miller case by referring to the attorney's letter. This is after Anderson. They talk about the attorney's letter. And then, again, in Martin, they talk about the attorney's letter. They didn't say. But they keep saying, we're hinting to you, so appellate court, wake up. So maybe is it time for an appellate court to say, you know what, Anderson was before these two cases, and maybe we don't agree. I mean, I'm just saying, what should we take from the Supreme Court telling us this over and over again? Nothing until they've been confronted with the actual situation. And it's my position that it's a violation. Well, can't we do it? I mean, I don't even want us to. But, I mean, they're hinting to us. So do we have to wait for them to say it? Then let me complete my answer. Okay. It's a violation of my client's due process rights that you take their property from them. Deprive them of their property without due process of law. It would be totally unfair for them to be ‑‑ for this court to impose a duty on them to take their property and put it off on the side simply because an attorney who has no relationship to them whatsoever says, we demand that you preserve this evidence. Now, you ‑‑ But we don't ‑‑ And look at the consequences. But wait. Forget the letter. Okay. We have a court saying preserve this. And this is not a protest. So we're playing ‑‑ There's no evidence that they didn't comply with the court order. Isn't that a fact that will be determined later? Now, when we talk about another factor, they weren't just a potential litigant here. There was a suit filed. They were named. Right? The driver and Dante were named. If they destroyed this evidence, then it would come under shim and ask. Right. Let me ask you this. I think we understand your position. But let's talk about proximate cause because it's one of the arguments you raise. All right. Well, I thought that both briefs do that. But if she's going to speak to that, we'll let her. I just want to point out that in California, they have a separate court for spoliation. And when ‑‑ and they allow a specific request to preserve evidence. But it's only valid if the person making the request says that they'll pay for the cost of preservation or otherwise undertake the burden of preserving that evidence. It's a substantial burden on a defendant to appropriate. Just think of the Martin case where if the plaintiff's attorney had written a letter, they would have to stop that project. They would have to keep that I-beam in the water until the plaintiff's attorney was satisfied that he had been able to inspect it. It would put a cost of millions of dollars because a plaintiff's lawyer writes a letter saying, we demand that you maintain that evidence in its current condition. I think it's a violation of due process if you were to say that because an attorney writes us a letter, that's enough to create a difference. And that's really not their argument. Their argument isn't that simply the letter going out was a problem. They are asking to take all of the allegations in their entirety. That is, that there was a letter, that there was a complaint filed. And we're just talking about year two. And the court order. And the order doesn't say anything about it. On November 9th, that tab was there. But it says don't allow it to be modified. Don't allow anything in the tab. Don't allow anything to happen to that tab. And there's no allegation that anything happened to that tab after that. There's not. No, there's an allegation that somehow that data recorder was either taken out or somehow it went away by accident. It may have disappeared before it ever got to that lot. All right. Anything further? I'm intrigued by this. I'm sorry to bring you back to the very first thing. But I'm intrigued by this idea that they plead from the 6th of October through November 9th that this thing went missing. And I'm getting your point that with regard to the special circumstances arising, that they couldn't have at least arisen until the letter goes out and then there's a letter of complaint in the court order. Is it sufficient pleading for the purposes of this stage of the litigation to say that it happened between those dates and to get by where they're at now in the case? And we'll figure out at some point later when it actually happened and come back to the question, well, if you can't prove that it didn't happen before the 9th, you're out of luck. Is that pleading sufficient or not? Look at it this way, Justice Palmer. Assume, just for the sake of our argument— I know I didn't phrase that well, but I think you know what I'm asking. Yeah, assume for the sake of our argument that the president of Dante Cab, when he had this car towed from the Chicago Police Auto Company, assume that when he picked it up from there, he went in there and he took the event data recorder and he threw it in the garbage. He threw it in the garbage. There was no duty on him at that point in time to preserve that evidence. They're claiming that the events that gave rise to that duty occurred beginning on the 9th of October. So if he had destroyed that event data recorder before that, there was no duty on him to preserve it. So, Mike, I understand that. That's your point, and I do have it. My question is, at this stage of the proceeding, is it sufficient to get by a motion to say it happened somewhere in that time, and we'll let you know later, or is it not sufficient? Because of the possibility, as you've raised, that it may have happened before the existence of the duty. Yeah, I think that the complaint is factually deficient. That's my position. All right. Thank you, Counselor. Thanks for the spirit of the argument. Ms. Jansen? Good morning, Your Honor. Good morning. I wanted to start out briefly on the issue of proximate cause that you raised earlier, and I want to start there because I think it's a pretty straightforward and easy way to resolve this case without having to worry about all these issues regarding the duty. The simple fact is all plaintiffs have alleged with respect to proximate cause is that the loss of the event recorder deprived plaintiffs of the opportunity to verify Mr. Muhayyadin's claim. That's why I keep calling him Mr. Muhayyadin. I noticed that when you did it, and that was what I intended to do. The driver's claim of a sudden acceleration. The cases are clear. Anderson v. Mack Truck in particular indicates that's not enough. You need to say why the missing evidence was critical to the claim that you're trying to make. How would that evidence have proven the claim that you would have made? What would it have shown that wasn't otherwise available to you? In this case, the fact that the cab apparently accelerated suddenly hasn't, to my knowledge, been disputed. That's what the driver said. Presumably plaintiffs can verify that. She was a passenger in the cab. She knows it worked forward or it didn't. There's no allegation that somehow verifying electronically that this sudden acceleration occurred would in any way establish, prove, suggest some sort of product defect. There's no allegation that the absence of this event recorder somehow deprived plaintiffs and consulting experts of the opportunity to inspect the cab and identify a defect if there was one. Did the trial judge in her rulings at some point indicate that she was not dismissing on proximate cause and damages? She did. I believe it was with regard to the fourth amended complaint. I'm not certain as to which of the orders. She did indicate that she was not dismissing based on proximate cause. But as you know, the court can affirm. Now let me ask you this. What do you think they would have to allege in terms of the event data recorder? I mean, isn't it enough to say that by not having that item preserved that they did lose the ability to prosecute a product liability case with a proximate cause? Framed that way is simply a conclusion as proximate cause. They would have to allege specific facts. For example, they would have to say, if we had the event data recorder, this is the data that would be contained on it. And this data would be useful for proving a product liability case because it would show X, Y, or Z with regard to a defect, all of which are not alleged in this case. Correct. We have no idea other than that it would have verified a sudden acceleration what this event data recorder would have shown. We don't know what defects that are claiming occurred. We don't know why they can't establish it through other means. And in Anderson, the defendant, which had been the underlying claim decedent's employer, had discarded, got rid of a hydraulic hose or a garbage truck lift that resulted in the accident. And there was no question that this was destroyed, and there was no question that part of the allegations were that the injury had occurred because of a fault or a defect in this hose. And the poor Anderson said, okay, fine, but we have a report from OSHA that indicates that this hose had been modified prior to the accident. That's what you're claiming you needed the hose to show. Why do you need the hose? What information could you have gotten from the hose itself that you can't get as evidence out of that OSHA report? And we have that same situation here. What evidence could plaintiffs have gotten out of that event data recorder that she doesn't have already from her own observations of the accident scene and from the driver's own statements? Is there some suggestion or an allegation that the event data recorder could verify that the cab did a sudden lurching? The allegation is that it would verify a sudden acceleration. Sudden acceleration. But there's no allegation that it would verify or indicate in any way, shape, or form a sudden acceleration. That it would distinguish between a sudden acceleration due to driver error and a sudden acceleration due to some sort of unidentified product defect. So all we know is that it would show that, yes, the taxi cab suddenly started going faster. We have no idea why. As far as WOLI, you represent WOLI, the affiliation, and the medallion. Now is WOLI alleged to be the principal in terms of this driver? No, absolutely not. Is there an allegation to suggest that the driver and Zante are the agents of WOLI? I believe there might be a conclusory allegation saying that the driver was an agent and or employee of Zante and or WOLI. But what is in the record is in fact the taxi affiliation agreement between WOLI and Zante, which lays out clearly what the actual relationships between these parties are. And it's nothing more than a licensed Zante to use the checker taxi cab insignia. That agreement, if you read through it, is the exhibit A complainant's recommended complaint. It clearly falls out. You guys are independent contractors. We are not establishing any sort of employee, employer, agent, principal type relationship here. We're licensing the use of our insignia and allowing you to use our dispatching services. In terms of the taking possession of the cab and the fact that there were these three allegations of a letter and the complaint itself and then the court order, what is your response to their suggestion that they have undertaken to preserve this evidence when they took it into the garage right after the accident? Certainly, and I'm going to go through each of my clients separately. Yes. Because each one is individual. With respect to WOLI, it's actually interesting. If you look at count three of the complaint, which is the soliation complaint against WOLI around 8-7, there's actually no allegation whatsoever that WOLI ever knew of the order or ever knew of the letter or ever knew of the complaint. In fact, the letter is not even mentioned in count three as to WOLI. So there's nothing there to suggest that WOLI had any knowledge whatsoever of these requests for the preservation of the evidence. There's also nothing in the complaint to suggest that WOLI had any sort of control over the decision to move this cab to the parking lot that was leased by Medallion. Dante and the driver parked the cab at a storage lot. They say there's an allegation that WOLI knew that an accident had occurred, but I don't think that knowledge of an accident is sufficient to create a use. Was there an allegation that the cab driver told Dante and WOLI that the cause of the accident was a sudden acceleration? Or was that limited to Dante? Before I answer, I'm just going to confirm very quickly to make sure I don't misspeak. The allegation is, like many of the allegations, that WOLI knew or should have known that the driver had claimed a sudden acceleration. Again, as your Honor pointed out earlier, there's no specific fact alleged to indicate how WOLI is supposed to have known or should have known of this driver's claim. Well, the allegation is, I think, that due to its corporate relationship with Dante and its agreement to store with taxi and the Medallion and the affiliation, that they knew of these three items, the letter, the filing, and the actual order. The problem with that, though, is that the plaintiff does not allege what this corporate relationship is or how it would give knowledge to any of these three defendants of this letter, of this order, or of this complaint. We know what the relationship between WOLI and Dante is. It's a taxi affiliation agreement. It's licensing of the insignia. There's nothing in that agreement. And this court can read that thoroughly if it attaches to the complaint. There's nothing in that agreement that gave WOLI some sort of obligation to discover this letter, this complaint, the trial court's order. And significantly, this is also this affiliation agreement. It's not an agreement between the plaintiff and WOLI. But for a contract or an agreement to give rise to a spoliation duty, that contract or agreement has to actually be with the spoliation plaintiff and the spoliation defendant. Now, as to Medallion and affiliation, I think the allegations are even thinner. Because what the allegations are regarding the role of Medallion and affiliation in this case, Medallion leased a storage lot from Paperboard Ventures. They've got the lease for this lot. The cab gets stored there. Affiliation apparently paid the fee for that lease. That's the complete role alleging the complaint of affiliation. There's nothing to indicate that either Medallion or affiliation had any role in deciding which cabs would be stored at the storage lot, that they had any sort of obligation or duty to anyone to go out and discover what the circumstances were that led to the cab being stored at that lot. There's no specific fact alleged that they had reason to know about these requests. Not made to them. Made to the driver and made to Dante to preserve the evidence. There's really just no basis whatsoever for imposing a duty on them. You're probably more familiar with the agreement regarding the storage. But would you describe it as simply a general agreement to allow the driver or Dante or Wally to store vehicles there? Because there is an agreement, and presumably there is. I honestly don't know nothing about it. It's not alleged in the complaint. It's not attached to the complaint. You know, I would assume that before they parked their taxi cabs in this lot that they've come to some sort of agreement with the lot owner. But I don't know that it's any different than when I parked my car at any of the lots down here. And certainly those lots would not be responsible for determining whether evidence in my car needs to be preserved. And who is this agreement between? There is attached to the Sixth Amendment complaint an expired lease agreement between Paperboard Ventures, which is the owner of the lot, and Taxi Medallion. Basically, this is a lease agreement that they've leased the lot. It tells us nothing about any sort of obligation owed to Dante, to Mokume Dean, or in particular. Well, this says it's between Dante and Woley. Are you looking at Exhibit A? I am. Okay. I think it's Exhibit A. Exhibit A would be the Taxi Affiliation Agreement. That has no relation to medallion or affiliation. That has nothing to do with the storage of the cab at the store. Is there an agreement? Any agreement with them? None that I am aware of. So what's B? B is the agreement between the owner of the lot and Taxi Medallion Management. And Taxi Medallion Management, yes. That's basically just their lease agreement. So there's no agreement between, are you saying Dante and Woley with Taxi Medallion or Taxi Affiliation Services? I'm sorry, can you? There's no agreement at all between Dante and, and I'm including Woley. Okay. With Taxi Medallion or Taxi Affiliation. Certainly none that I'm aware of or that has been alleged. I am confiding myself as well. So they said to us that accepting into their box this tax account was a voluntary undertaking. And I'm saying that they're flat out wrong. It's not. Allowing somebody to park their vehicle in your storage lot is not a manifestation of an intention to preserve the vehicle for the plaintiff's benefit, which is what the Supreme Court has indicated is required in order to create a voluntary undertaking duty. That's what the Martin Court said. You know, you can't just allege vaguely that somebody undertook a duty. You have to allege specific acts that that defendant undertook specifically to manifest its deliberate intention to undertake this duty, to preserve this evidence for the benefit of the plaintiff. And saying, okay, park your vehicle in my lot, does nothing to that effect. It doesn't even indicate an awareness of the plaintiff's existence, much less an intention to undertake a duty for her own benefit. Is there anything further you want to add? If this Court has no further questions, can I just ask that you affirm that this is all in favor of my client? I just want to say that from your argument, it's clear that you have a greater understanding of black boxes than your father. It's the generational difference. Thank you, Your Honor. Just briefly to address some of the issues that have been raised. First, and I guess kind of overarching, is that this order of November 1, 2011 dismissed this case with prejudice. That was after a series of amendments in which the Court was engaging the parties in somewhat of a discovery as to this lot and its ownership, and that's why there are so many amended complaints. The dismissal with prejudice under the circumstances of this case as fled under the law was an abuse of discretion, and we ask that at the very least, at the very least, we be granted leave to re-plead to... Well, is that a request that you make... First of all, I don't believe we're reviewing this for an abuse of discretion. All I'm saying is that if this Court were to... But I don't believe you made the request in your brief to re-plead, did you? I don't believe we did in our brief. I don't believe we did. But under the circumstances as pledged, under the case as pledged, all of the criteria set out by Boyd and followed by the Court's procedures, specifically in Miller, in Groby, in Boyd, in Jones, in Jackson, have been satisfied in that there is a sufficient showing of a duty that each of the five dismissed defendants owe to the plaintiffs to preserve this critical evidence. Well, according to counsel, there's really no agreement at all between the medallion and the affiliation company with any of these defendants. Nothing in writing. Between the medallion owner, Zante, and the association... Not Zante. The other defendants, taxi affiliation and taxi medallion. We kind of talked about that before. There is some reason that this taxi cab ends up at this lot that's owned by these entities and controlled by these entities, I should say. And the specifics of that agreement will be discovered in the case. The timing issues that were raised, I believe, are insignificant because the complaint alleges that the event data recorder was in fact present within the taxi cab at the time that it went to this lot, and then by November 9th, when we went to inspect it, it was gone. So it's not as sufficient within the duty. Agency was pled as to Woolley. There is an allegation that Woolley, as the association, is the principal to Zante and its driver as its agents. And why don't you end on some discussion about how or what you pled regarding proximate cause. And finally, the proximate cause is in line with the precedent from Boyd and others that where a plaintiff is deprived of a cause of action. And that's what the complaint alleges. Well, that's one of the questions, clearly, is whether it alleges that you've lost the cause of action. Now, counsel has suggested that your allegations regarding proximate cause are merely conclusions, and you don't allege anywhere that because you don't have the event data recorder that the event data recorder would then show or explain why or if and when this sudden acceleration took place. And as a result of that, you've lost your cause of action. Your cause of action, so, I mean, I really think you need to address that. I believe the complainant law sufficiently states that because of the destruction of this critical evidence, Joyce Kilburn has lost that cause of action. She has lost the ability to proceed with a cause of action against the manufacturer of the vehicle or component parts of that. And at the trial court level... The trial says that the complaint doesn't state what it is that the event data recorder would have told the court. So what is it that the recorder would have told the court? Right, so there's... That the engine wrapped from a certain number of revolutions to a certain number of revolutions within a period of time, or what? To put it simply, this vehicle crashes, and the event data recorder, the black box, then records what has been done on that vehicle beforehand. If that event data recorder shows that the driver was braking the entire time immediately prior to the crash, but that the speed was increasing, that's sudden acceleration. But what you're saying now is certainly not alleged anywhere. And I guess we can. We can do that. At the trial court level, the trial court said, our allegations are significant for proximate cause. Let's talk about duty. We then went into a number of amended complaints where we talked about duty, until finally the trial court said, you know what, that's it. There can be no cause of action that states a cause of action. And here we are. Okay. Let me get back to what appears to be my favorite topic. Counsel gave us a hypothetical. He said that if the cab owner, prior to the delivery of the October 9th letter, sometime between October 6th and delivery of the October 9th letter, if he went into that cab and ripped out that recorder and threw it in the trash, he would have had no duty. That would not be a violation of any duty. And so I guess we can refer to this as this gap time. I'd like you to speak to this gap time. Now, I know that if we accept the concept that starting on the 9th with the letter, and the court order, that a special circumstance arises, that a duty arises as a result of special circumstances. From the 9th forward, fine. Okay. But between the 6th and the 9th, counsel I think is telling us that you can't say that there was a duty at that time, and you can't say that that's not when the black box went away. Now, I do note that in your complaint, you do say that through the 8th, it's through the 8th, the component parts were present. You say that. So I guess I need you to speak to whether there's a gap there or not, during which these deeds could be done without violation of duty. I looked at your complaint. I know he said prior to the 9th, it could have been thrown away without violating of duty. But you do say that it's in the cab through the 8th, and the letter's delivered on the 9th. So could you speak to whether or not you think there's a gap in your pleading? And the second part of my question is, and then I'll stop. The second part of my question is, at this pleading stage that we're at now, is it sufficient to have said, as you said, this occurred sometime between the 6th and the 9th of November, I think it is. Yeah, 9th of November, in order to keep you in the courthouse. Okay. Okay. So October 11th of 2012, I would have told you that all of the precedent says that because Zante knew that it was a potential litigant to a product liability cause of action, as of October 8th, there was a duty upon Zante to preserve that evidence. After the Miller case comes down on October 12th, the Miller case says, simply being a potential litigant alone is not enough to give rise to a new duty. I'm sorry. I mean, I'm sorry for the confusion. They say a potential litigant alone is not enough. There are still cases in which there is a potential litigant plus knowledge of a potential product liability implication to a lawsuit, plus segregation of the evidence. That's Miller versus Gupta is a special circumstance. Take the letter out. Take the court order out. Take the complaint out. But that still is a special circumstance. Now, when you add on October 9th and we add in the letter, I believe there can be no doubt that at that point there is a special circumstance. And when you add in on top of that the complaint and the court order, I think it just continues the pipeline as to the evidence of a duty. Now, under the hypothetical, if Zante on October 8th, well, actually it can't be October 8th. The complaint alleges that as of October 8th and thereafter, all component parts are present. The reason for that is the morning of the night. Right, the morning of the night. Before the letter comes. Because we do know from photographs that when the taxi cab is moved by Zante to the lot on the afternoon of the 8th, photographs are taken which show the presence of both component parts of the black box. And that's why that allegation is in the complaint as well. So that if the president of Zante on the morning of the night comes and removes it, I believe there still is enough special circumstance. And that being Zante knows it's a potential litigant. Zante knows the product liability implications. Zante knows of, well, Zante has already begun at that point to preserve the evidence and segregate it. For some reason they've now moved it to this lot, photographed it, and decided to keep it there. That is A, a special circumstance, and B, a voluntary undertaking on their part and on behalf of the other department. Anything further that you wish to add? Thank you for your time this morning, and we do ask that the case be reversed and remanded. All right. Well argued and well briefed, and it will be taken under advisement. And we're going to take a short recess, and then we'll call the next case.